Summary judgment, Your Honors, should have been granted based upon qualified immunity because, first, Ms. Wilson did not even apply for, in any event, she was unqualified as a matter of New York State civil service law for the recreation director position she sought, as a result of which she could not have established the second prong of a prima facie case of employment discrimination. Secondly, Donat could not have violated Wilson's constitutional rights because he had no legal authority to change the promotional criteria since, once again, as a matter of New York State civil service law, they are established and can only be changed by the Newburgh Civil Service Commission. Third, Your Honors, if you agree that Donat should be dismissed from the case for either or both of those reasons, then too should the city be dismissed because the allegations against it are identical to those against Donat. First, Ms. Wilson concedes that she did not have the requisite qualifications as required by the civil service commission to be promoted into the recreation department director she sought. She never took the civil service promotional examination. She did not possess the college degree that the commission required. And as a matter of law, again, New York civil service law, the civil service commission, not Joseph Donat, not the city council or anybody else, established and could have changed the eligibility criteria for that position. The commission's decision to require a college degree was implemented in 2015. That predates Donat's employment with the city by several years. And as a result, Donat could not personally have been involved in establishing the college degree criterion in order to deprive Wilson from a promotion, let alone because she is a woman. There's no evidence in this record that Donat communicated with anyone in the commission about that criterion. Or that he had any legal obligation to communicate with them, or that he did anything to make Wilson unqualified, or that he had any personal animosity towards Wilson, let alone because of her gender. Phrased another way, Your Honor. Does the analysis change if there is evidence of direct discrimination, if someone is unqualified, if there's evidence that the civil service board, for example, was unwilling to change the qualifications because of race or gender? Does that change the analysis? It would, Your Honor, and that's the Village of Freeport's agagia decisions that Your Honor was involved in back in 2012 and 2013, I believe it was, in which there was direct evidence in that case of efforts by the Village of Freeport to try to change the civil service criteria for promotion into different positions. And the commission did make some changes. Well, actually, it was the reverse of this. The plaintiff was qualified, and there was evidence they were changing the qualifications to make someone else also be qualified based upon racial motivation. Yes, sir, and there's literally no evidence of that in this case. There's no evidence... Wilson points to this comment in his reply that suggests that the decision was being made based upon gender, that they want a young male, I think was the comment. Yes, Your Honor. May I address that? Yes. So that is a comment that we take as true for purposes of this appeal, of course, by a non-decision maker, the city council has no role in hiring, the city council has no role in establishing promotional criteria, to another non-decision maker, Donat, and when I say non-decision maker, I mean for purposes of deciding what the criteria are for promotion. So there's literally no evidence that the commission even knew that Wilson was interested in the job or that there were discussions about changing the criteria or anything else, and the commission is not even a party to this case. So even if Wilson were to prevail, she can't get the job she wants because the commission has not changed the This argument flies here, and it's literally the opposite of the Freeport case, as you point out. Can I just ask you, if we were to agree with you, you want us to dismiss the claims against the city, this claim against the city as well, but they're not, they didn't follow, there's no notice of appeal on their behalf of the city, does that, how can we do that? Well, that's correct, because the appeal here is strictly based on qualified immunity, and that's personal to Donat, of course. However, as we've put into our briefs to the court, the court is allowed to consider collaterally. I'm aware of that, but usually that's the same party where one, you know, you have one claim that you're looking at qualified immunity, there's another claim by the same party that they're appealing that says this is inextricably intertwined, and we want you to consider that as well, whereas here you have a different party who didn't file a notice of appeal. Yes, I don't believe the city could have filed a notice of appeal under the circumstances, but even if it could, Your Honor, the allegations against the city are 100% intertwined with the allegations against Donat, that's confirmed both by the cause of action in the original lawsuit, it is confirmed in her own brief, I believe at page three, where the allegations are literally the same, the allegations are city manager Donat, i.e. the city, did not do what we wanted him to do. And if we would agree with you, but didn't address the city, certainly you could file a motion for reconsideration if we found, for example, there was no constitutional violation as a matter of law based upon these allegations and evidence, you could just file a motion for reconsideration on behalf of the city, right? Yes, Your Honor. Unless the court has any other questions, that's my argument. All right, thank you. Thank you. All right, Mr. Sussman, you're up. Thank you. May it please the court. Michael Sussman representing the appellee. We believe that Judge Roman correctly decided the matter for these reasons. Mr. Donat was the appointing authority here. The civil service was not the appointing authority. Ms. Wilson had been appointed to this position four or five times in the immediate 10-year period before this and was fully qualified to serve in the position. Mr. Donat acknowledged that and indicated that he and Ms. Kelsen, the city attorney, would be lobbying for a change in the qualifications because it was so clear that the qualifications adopted in 2015 were not valid, meaning that he was a person who had done the job repeatedly over time and was highly qualified to do it and had demonstrated that, regardless of her not having a college degree. What we understand happened is Mr. Donat then went to the city council, which is the appointing authority for the civil service commission in the city of Newburgh, and the city council indicated to Mr. Donat that, in fact, they wanted a young male for the position and to cease and desist, in essence, from his efforts to get any change made with respect to this qualification. So the narrative that I heard Mr. Zuckerman explain to the court, in my view, is not actually what is supportable, and I think the district court made clear he felt not supportable by the record. So if Mr. Donat was, as he is the appointing authority for the position, if he had the ability to, if you will, lobby and make the kinds of changes with the city council's approval, with the city commission, which isn't really, Mr. Zuckerman makes it sound like it's an independent body, and it may be independent juridically, but in the real world it's not independent. They work in concert, and that's what the district court understood here, and that's why he found what he found. So the argument that he's not personally involved in the decision seems clearly untrue. The way I would analogize this is if an individual who has the appointing authority is told by his principal not to hire an individual because of his race or gender, does that individual have personal involvement when he does comply with that direction and order? Seems to me that's essentially what happened here. Mr. Donat was in a position where he could have said, wait a minute, we have an individual who you repeatedly, we've repeatedly had do the job, who's repeatedly demonstrated her capacity to do the job, we have a formal rule that we recently adopted which is plainly not valid, meaning it doesn't test for whether someone can do the job or not, as she has repeatedly demonstrated, as we've repeatedly demonstrated by putting her in the job. I thought that the college requirement had been around for years. No, no, the requirement was a 2015 requirement. That was the newly placed requirement as I understood it. So, and, you know, the interesting... I'm thinking around the well-established law. They have to be qualified for the position. You cited my case in Zagaha, but I don't view that as this situation. As I said, in that case, she was qualified under the civil service rules and they were going to change the qualifications to allow another individual of a different race to qualify, and it was direct evidence of discrimination. And you don't have either of those things here. She is not qualified under the current civil service rules, and the district court did not consider that comment to be direct evidence of discrimination. The district court did consider it to be direct evidence. As I read the district court's decision, the district court says right here, I'm looking at page 24 of the slip opinion, considering Wilson's demonstrated ability to perform the duties as director, comma, that she was repeatedly promised the position, and Donat's alleged statement that the city wanted to fill the position with a man, comma, the court finds the reasonable fact finder can infer that Donat did not appoint Wilson's position as director due to her gender. It doesn't mean the district court found it to be direct. The district court applied the McDonald-Douglas test to all of these claims. So if you found direct evidence of discrimination, you would not do that, right? I'm reading . . . well, I thought Your Honor was indicating that the district court didn't find significant comment. I mean, the district court mentions that as one of the three . . . Well, but to dispense with this requirement that someone be qualified, you have to have direct evidence of discrimination under our law, and the district court never said I'm McDonald-Douglas analysis because there's direct evidence of discrimination. It just considered that comment along with the other evidence and concluded, without addressing the issue of qualification, the requirement of qualification, that there was enough, you know, to overcome the summary judgment motion. Well, I don't think he's not addressing the issue of qualification. I think what the district court is saying is that the issue of qualification was something that was malleable within the ability, just like in the case that Your Honor participated in. It could have been altered. In your case, you decided it was altered, and it was altered for a discriminatory purpose. That was the finding. Here, the issue is it was not altered for a discriminatory purpose. It was not altered by individuals who could have affected the altering it. Well, we're under qualified immunity. Give me any case in the history of the circuit where someone is unqualified for a position in the absence of direct evidence of discrimination. It's going to have to go forward under the theory that you're asserting here. But there is direct evidence. That's the point. The direct evidence is the evidence by the individual who had said to my client, we're going to- You're saying direct evidence, Donat, who doesn't have the ability to change the civil service rules, saying they're not changing it because they want a younger person, you consider that direct evidence of discrimination? Absolutely, because the process in the real world, the process of making that change is instrumented by the individual in Donat's position as the city manager. Mr. Donat, I guess that's what I don't get. If the evidence here that you've set forth is Donat was going to bat for your client and said, I'd like to give this to you and I'm going to lobby, and then he comes back and says they won't do it. I mean, you keep saying direct evidence. I'm not sure it's direct evidence. But let's say it's direct evidence, but only, if you will, direct evidence of somebody else, not of Donat's discriminatory intent. How do you fault somebody for saying I went to bat for you and I failed? Well, I think the way you fault someone is because that individual is the appointing authority. Donat is the appointing authority in this case. But faulting in the sense of how do you describe discriminatory intent to that person? Because he understands that the reason that the change is not being made is for a discriminatory reason, and he is then implementing that discriminatory reason. That's the point. How does he have a choice? Well, his choice is... How is he implementing it? The implementation is not making the change in the qualifications to the position. He doesn't have the authority to do that. The implementing is appointing an individual who is formally, and I acknowledge, who is formally qualified, the gentleman who took the position. But I guess I'm not sure that that's true. Why is that the discriminatory action? Because it seems to me you're faulting him for not making the change to make her qualified, to change the position. And if that's out of his hands, and he was trying to do it, I don't see how that's discriminatory. Why is the blood on his hands? The premise of the question is that's out of his hands. And Mr. Zuckman is arguing that there are these very strict kind of jurisdictional distinctions, and I think that's the part where it breaks down. It's not out of either the city council's hands or his hands, because they are effectively in control of the commission. The evidence was that to the extent it was in his hands, he was trying to get it changed. So then, again, if you want to say that, okay, it's all a big mush, and they're all sort of deciding it together, then you should ask, well, who in the mush was trying to do something discriminatory and who wasn't? But all the evidence is that he was trying to do something in favor of your client. So I guess I'm trying to figure out why you are saying, well, if you're going to throw him in the mix, then he has to be sort of strictly liable for a decision somebody else made. Because if you're saying, no, no, no, they all sort of have a decision-making role, then why don't we just look at his decision-making role? I understand the question. What decisions he made. The decision he made was to accept what he understood to be a discriminatory direction. The discriminatory direction was we want a young... He should have hired no one, then. You're saying he should have hired no one? He should have said to the entities that were making the discriminatory pronouncement, you cannot do that. You can't make the determination that you want... How do you know he didn't? I guess there's no evidence here of what he said, other than I'm going to bat for you, and then he came back and said the city council wants somebody else. So now it seems to me you're making up stories about what he said and what was told to him. We know what he did. I'm not talking about what he said. We know what he did. What he did is he went along with it and he said to her, that's decisive. And what I'm saying is that he was the implementer as a city manager. He was the appointing authority. No one else was the appointing authority. If he understood that there was an unconstitutional premise for the refusal to do what he and the city council felt was justified, which was to alter the qualifications, because she had demonstrated her capacity to do the job over and over again, and that this formal qualification was really nonsensical, which is what he was really conveying. If that's what he did, then he's a participant in the discrimination. And, yes, he did have authority to do more. He could have said to them, look, you want me to appoint a white male? That's not a permissible criteria. I can't simply follow that. I'm the appointing authority. I'm not allowed to do that. That's not a neutral criteria. That's a gender-based and age-based criteria. Instead, he implemented it in any event. Thank you very much. Mr. Zuckerman, you have two minutes in rebuttal. Thank you, Your Honors. Just one thing. The college degree requirement was first implemented in 2007. That's all. Thank you, Your Honors. Thank you. We'll reserve decision. And thank you and have a good day. Thank you. You're welcome. The next